UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:06CV108-J

RALPH WARRINER, JR.                                                                               PLAINTIFF

v.

MICHAEL ASTRUE,
Commissioner of Social Security                                                                   DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on plaintiff Ralph Warriner's request for review of the decision of the defendant Commissioner denying his claim for disability insurance and supplemental security income benefits. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

I. Introduction

Plaintiff filed the present applications for disability insurance and supplemental security benefits on May 29, 2003 alleging that he became disabled on June 1, 2000, at age 31 due to back problems, high blood pressure, and chest pain. His work history includes work as a knitter at Fruit of the Loom, general laborer at Warriner's Construction, die caster, sewing machine operator, and general laborer at Stephens Pipe and Steel. His educational background is limited as he completed the sixth grade. Following a hearing on March 3, 2005 at which both a medical advisor and vocational expert offered testimony, Administrative Law Judge Ronald Kayser ("ALJ") found that he remains capable of performing light work. Plaintiff has appealed from this unfavorable decision.

## II. Standard of Review

This Court's review of the Commissioner's findings is limited to determining whether they are supported by substantial evidence, 42 U.S.C. §405(g); *Elam ex. Rel. Golay, v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Kirk v. Secretary of HHS*, 667 F.2d 524 (6th Cir. 1981); *Jones v. Secretary of HHS*, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, *Smith v. Secretary of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

## III. Plaintiff's Argument

Plaintiff makes one primary argument in his fact and law summary, stating that the crux of the case relates to Listing 12.05C (Plaintiff's Fact and Law Summary, page 6). He challenges the ALJ's finding that he does not meet Listing 12.05C. Listing 12.05 is unique in the following ways:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs

> A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Part 404, Subpart P, Appendix 1, "Listing of Impairments," §12.00A.

In relevant part, the listing at issue reads as follows:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C. The plaintiff bears the burden of proof to show that his condition satisfies the Listing. The threshold introductory paragraph requirements of Listing §12.05 apply no less than the requirements of the Listing itself, *Foster v. Commissioner*, 279 F.3d 348 (6th Cir. 2001). The introductory paragraph requirements are as follows:

1. The claimant must suffer from "mental retardation" or autism.

2. The claimant must have "significant subaverage general intellectual functioning."

3. The cognitive deficiency must result in "deficits in adaptive behavior."

4. The cognitive deficiency must be "initially manifested during the developmental period (before age 22)."

With regard to requirement #1 above, the plaintiff points to the psychological evaluation by Edward Lovelace, M.S. who diagnosed mild mental retardation (Tr. 176-179). The ALJ rejected the opinions of Mr. Lovelace that plaintiff will never be able to find work and is functionally

3

illiterate, as the record indicated a steady work history from approximately 1986 to 2000 and the plaintiff was able to complete numerous social security forms clearly and legibly. In addition, the psychological evaluation by Dr. Kenneth Starkey indicated a verbal IQ score of 77, performance IQ of 69, and a full scale IQ of 71 with a diagnosis of borderline intellectual functioning (Tr. 180-189). The performance IQ of 69 would satisfy the IQ requirement of the Listing.

First, the Court will consider the fourth introductory paragraph requirement, that the cognitive deficiency must be initially manifested during the developmental period (before age 22). In order to meet his burden of proof on this issue, a claimant should be able to point the decision maker to evidence in the record of IQ "testing or evaluation [that] was contemporaneous with his developmental period." See *Foster* supra, at pp. 354-355 (a claimant's condition was found not to satisfy the Listing, in part, because none of her testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed in 1997.) The plaintiff's recent IQ test by Dr. Starkey indicate a performance IQ of 69 which would satisfy the IQ requirement of the Listing. However, there is no evidence that these low results would have been obtained prior to the age of 22. In fact, plaintiff's school records appear to assign IQ scores of 77 and 71. The plaintiff has failed to establish that he was intellectually disabled prior to age 22.

It should be noted that this Court is not able to review the transcript of Dr. McKeown's testimony at the hearing, and plaintiff has apparently waived any objection on that issue, stating on page 6 of his Fact and Law Summary, "Also we would again point out that the record is incomplete. However, we believe that a decision can be made on the evidence before this Court. Ralph has waited too long for a decision and we certainly would hope that his claim can be granted." In light

of this, the Court has only the ALJ's Decision which discusses the testimony of Dr. McKeown upon which to rely. Apparently, when addressing the issue of the plaintiff's various inconsistent IQ scores, Dr. McKeown noted that on the Weschler IQ test, a person can test lower than their actual ability but not higher. Thus, the plaintiff's second series of Weschler test scores of verbal IQ score of 77, performance IQ of 69, and a full scale IQ of 71 would presumably be more accurate than the first series administered by Mr. Lovelace. The ALJ also notes that these scores are more consistent with the school record test scores of 77 and 71.

Next the Court considers the first, second and third introductory paragraph requirements of the Listing:

1. The claimant must suffer from "mental retardation" or autism.

2. The claimant must have "significant subaverage general intellectual functioning."

3. The cognitive deficiency must result in "deficits in adaptive behavior."

Low IQ test results alone will not satisfy these requirements. On the contrary, "the results of intelligence tests are only part of the overall assessment" and that the decision maker must also determine "whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Listing §12.00(D)(6)(a). Accordingly, the Commissioner may reject IQ test results as inconsistent with the record as a whole, including the claimant's daily activities and abilities to live independently and care for himself. *Carrington v. Commissioner*, 1999 WL 1206887 (6th Cir. 1999).

An important component of the "record as a whole" analysis is a consideration of whether a claimant successfully worked in the past. *Longworth v. Commissioner*, 402 F.3d 591, 597 (6th Cir. 2005) ("the fact that Longworth worked consistently and successfully as a nursing aide for fifteen

years weighs heavily against her claim of severe [intellectual] impairment"). An ALJ must analyze the current IQ score within the context of other factors. The regulations themselves note that IQ test results are only part of the overall assessment, and that the report accompanying the test results should address whether the IQ scores are valid and consistent with the development history and degree of functional limitation. The ALJ properly considered plaintiff's work history, activities of daily living, ability to live independently, and the opinions of the state agency psychological consultants in determining that the IQ score is not a valid indicator of mental retardation.

## IV. Conclusion

In this case, the probative medical and other evidence of record supports a conclusion that the introductory paragraph requirements of the Listing are not satisfied. The ALJ properly considered the opinions of record as well as the evidence of plaintiff's previous levels of functioning in making his determination. The ALJ's decision is supported by substantial evidence and will not be disturbed by this Court.

A Judgment in conformity with this Memorandum Opinion has this day entered.